UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

YOLANDA SANCHEZ, et al.,

        Plaintiffs,

    v.

COUNTY OF SANTA CLARA, et al.,

        Defendants.

Case No. 5:18-cv-01871-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE**

Re: Dkt. No. 31, 35, 40, 43

Plaintiffs Yolanda Sanchez and Daniel Sanchez (collectively, "Plaintiffs") bring this action against the County of Santa Clara ("County"), Kitina Martin, the City of San Jose ("City"), the San Jose Police Department ("SJPD"), and DOES 1-20 alleging constitutional violations and various state law claims. Presently before the Court are motions from the County, SJPD, and the City (collectively, "Defendants")[1] to dismiss the Complaint, or, in the alternative, strike portions of it. County of Santa Clara's Motion to Dismiss and Strike ("County Mot."), Dkt. No. 31; City of San Jose's Motion to Dismiss ("City Mot."), Dkt. No. 35. Plaintiffs also move to strike declarations and exhibits filed by the County and the City in connection with their motions. Dkt. Nos. 40, 43. For the reasons discussed below, Defendants' motions are GRANTED IN PART and DENIED IN PART and Plaintiffs' motions are GRANTED IN PART and DENIED IN PART.

---

[1] The County moves to dismiss on behalf of itself. *See* Dkt. No. 31. The City moves to dismiss on behalf of itself and the SJPD. Dkt. No. 35. Kitina Martin has not appeared in this action. Thus, the Court will collectively refer to only the County, the SJPD, and the City as "Defendants."

## I. BACKGROUND

### A. Factual Background

The Court summarizes the factual background of this case according to the allegations in the Complaint and matters which it takes judicial notice:

Plaintiffs are the paternal grandmother and paternal step-grandfather of minors JB and AB (collectively, the "Minors"). Complaint ("Compl."), Dkt. No. 1, at ¶¶ 5, 7. Plaintiffs currently reside in Sacramento, California. *Id*. ¶ 5. At the time of the events at issue in this Complaint, JB was eight and AB was ten. *Id*.

From February to May 2017, JB and AB resided with their parents, Stacy Coker and James Bustmante Jr. (collectively, the "Parents"), in Nevada. *Id*. ¶ 28. Their paternal grandfather, James Bustamante, also lived in the home. *Id*. In May 2017, Coker and Bustamante, Jr. arranged for JB and AB to be cared for by Plaintiffs. *Id*. The Complaint alleges that, prior to that time, JB and AB had spent a substantial amount of time living with Plaintiffs: AB had lived with Plaintiffs for 4 years of her life, and JB had lived with Plaintiffs for 3 years of his life. *Id*. ¶ 30.

On or around June 3, 2017, Bustamante brought JB and AB from Nevada to Plaintiffs' home in Sacramento. *Id*. ¶ 33. The Complaint states that Bustamante provided Plaintiffs with a written letter from Bustamante Jr., dated June 3, 2017, which stated that Plaintiffs were to have custodial care and custody of JB and AB. *Id*. A copy of the letter was not attached to the Complaint nor any of the parties' briefing on the instant motions.

On or around June 27, 2017, Plaintiffs agreed to allow JB and AB to go to the Great America amusement park with their paternal step-aunt, Eva Sanchez, who lived in San Jose, California. *Id*. ¶ 34. Sanchez[2] picked JB and AB up from Plaintiffs' home in Sacramento and drove them to San Jose. *Id*. According to the Complaint, Sanchez was planning on returning JB and AB to Sacramento in a few days so they could celebrate the Fourth of July. *Id*. ¶ 34.

On June 29, 2017, Judge Jim Wilson of the First Judicial District of Nevada authorized a

---

[2] Unless otherwise noted, "Sanchez" refers to Eva Sanchez.

telephone warrant for the emergency placement of JB, AB, and a minor named "Sierra" into protective custody, on the basis of ongoing substance abuse, neglect, and sexual risk. County's Request for Judicial Notice, Ex. 1, Dkt. No. 32-1; City's Request for Judicial Notice, Ex. B, Dkt. No. 35-6. The warrant authorized the Nevada Division of Child and Family Services ("DCFS") "to immediately take [the minors] into protective custody" and "to utilize the assistance of any law enforcement officer . . . if needed." *Id.*

Also on or around June 29, 2017, Plaintiffs received a phone call from a social worker at DCFS, who questioned Plaintiffs regarding the current circumstances of the Minors' parents. *Id.* ¶ 35. Plaintiffs informed DCFS that Coker and Bustamante Jr. had given them custody of the Minors on June 3, 2017 and that "they had the paperwork to prove it." *Id.* ¶ 36. On June 30, Coker and Bustamante Jr. faxed Plaintiffs a second letter which they signed and was notarized, stating that they had given Plaintiffs care and custody of the minors. *Id.* ¶ 37. A copy of this second letter also was not attached to the Complaint or any of the parties' briefing on the instant motions.

On June 30, 2017, DCFS contacted Plaintiffs and informed them that the Minors needed to be returned to Nevada. *Id.* ¶ 38. Plaintiffs informed DCFS that the Minors were safe, and that they were currently spending time with their aunt, Eva Sanchez, in San Jose. *Id.* ¶ 39.

In the early evening of June 30, 2017, DCFS contacted Eva Sanchez, who confirmed that the Minors were staying with her. *Id.* ¶ 40. Later that evening, around 10:30 p.m., two SJPD officers arrived at Sanchez's house. *Id.* ¶ 41. They did not have a warrant. *Id.* ¶ 43. They proceeded to enter the home without Sanchez's consent and encountered Sanchez's fifteen-year-old daughter, who they instructed to come with them to be interviewed. *Id.* ¶¶ 43-44.

Martin arrived at Sanchez's house at 11:00 p.m. *Id.* ¶ 45. She and the SJPD officers then left Sanchez's house to call DCFS. *Id.* After the phone call, Martin and the officers returned to the home and informed Sanchez that they were taking custody of JB and AB. *Id.* Sanchez informed the officers they did not have permission to re-enter her home. *Id.* The officers

proceeded to enter the home, took custody of JB and AB, and searched Sanchez's home for their belongings. *Id.* ¶ 46. The officers questioned JB and AB and then took them to Juvenile Hall to hold them temporarily. *Id.* ¶ 50. DCFS then transported JB and AB back to Nevada. *Id.*

**B. Procedural Background**

Plaintiffs filed the instant suit on March 27, 2018, alleging five causes of action: (1) a claim under § 1983 against the County, City, Martin, and DOES 1-20 in their individual capacities for violation of Plaintiffs' procedural due process rights; (2) a claim under § 1983 against the County, City, Martin, and DOES 1-20 in their individual capacities for violation of Plaintiffs' substantive due process rights; (3) *Monell* claims against the City and the County; (4) failure to comply with mandatory duties under California Government Code § 815.6; and (5) intentional infliction of emotional distress. Compl. ¶¶ 51-90. The instant motions followed. Dkt. Nos. 31, 35, 40, 43.

**II. LEGAL STANDARDS**

**A. Rule 12(b)(1)**

A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial or factual. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. *Id.* When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. *Wolfe*, 392 F.3d at 362.

In the case of a factual challenge, the party opposing the motion must produce affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the court need not presume the plaintiff's allegations as true. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *accord Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In the absence of

a full-fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Twombly*, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1998). "[M]aterial which is properly submitted as part of the complaint may be considered." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

## III. DISCUSSION

### A. Defendants' Requests for Judicial Notice (Dkt. Nos. 32, 35-4, 46-1)

Federal Rule of Evidence 201(b) permits the Court to judicially notice a fact that is not subject to reasonable dispute because it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." On a motion to dismiss, a Court may take judicial notice of "matters of public record" without converting the motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89, (9th Cir. 2001).

The City and the County both request judicial notice of a telephonic warrant, dated June 29, 2017, which was issued by Judge Jim Wilson of the First Judicial District of Nevada and places JB, AB, and a minor named "Sierra" into protective custody. Dkt. Nos. 32, 35-4. The warrant is attached as Exhibit 1 (Dkt. No. 32-1) to the County's Request for Judicial Notice and as Exhibit B (Dkt. No. 35-6) to the City's Request for Judicial Notice. "Courts regularly find that search warrants are public records properly subject to judicial notice [under Federal Rule of Evidence 201(b)]." *Ferguson v. California Dep't of Justice*, No. 16-CV-06627-HSG, 2017 WL 2851195, at *1 (N.D. Cal. July 4, 2017). Accordingly, the Court will notice the warrant.

The City also requests judicial notice of the complaint filed by Eva Sanchez in *Eva Sanchez v. City of San Jose*, Santa Clara County Superior Court No. 18CV326011, attached as Exhibit C to the City's Supplemental Request for Judicial Notice. Dkt. No. 46-1. Court filings are matters of public record which are proper subjects of judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, the Court will notice the complaint.

The City also requests judicial notice of the complaint filed in this case, attached as Exhibit A (Dkt. No. 35-5) to the City's Request for Judicial Notice. Dkt. No. 35-4. While this is a matter of public record and a proper subject of judicial notice under Rule 201(b), it is not necessary to judicially notice this action's own complaint. Accordingly, the Court declines this request.

## B. Plaintiffs' Motions to Strike (Dkt. Nos. 40, 43)

Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Plaintiffs move, citing this rule, to "strike" the Declarations of Kathryn J. Zoglin (Dkt. No. 35-3), Meheret Sellassie (Dkt. No. 33), and Gregory Charles (Dkt. No. 34-1) and their attached exhibits. Dkt. Nos. 40, 43. The exhibits to these declarations include the June 29, 2017 telephonic warrant which the Court judicially noticed above, the subpoena which requested it, a responsive letter from DCFS, and the entire Santa Clara County Social Services Agency ("SSA") file for JB and AB. *See* Dkt. Nos. 33-1 (SSA file), 34-4 (subpoena, responsive letter, telephonic warrant), 35-2 (subpoena), 35-3 (telephonic warrant). Plaintiffs argue that these materials pertain to matters outside the pleadings and are not otherwise proper subjects of judicial notice. Dkt. Nos. 40, 43.

Because the Court has already determined that the telephonic warrant can be judicially noticed, it will not exclude this document from its consideration. To the extent the declarations authenticate copies of the telephonic warrant, the Court will not exclude them either. However, since Defendants have not specifically requested that the Court judicially notice the subpoena, the responsive letter, or the SSA file and because the Court need not consider these materials to decide Defendants' motions, the Court will exclude them from its consideration. Thus, Plaintiffs' motions are DENIED with respect to the telephonic warrant and the portions of the declarations that authenticate it, and GRANTED with respect the remainder. Further, because the Court will only consider the pleadings and materials which it can judicially notice, Defendants' motions will not be treated as ones for summary judgment pursuant to Rule 12(d).

## C. Defendants' Motions to Dismiss and/or Strike (Dkt. Nos. 31, 35)

### i. Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Before turning to Plaintiffs' claims, the Court must address whether it can exercise jurisdiction over this case at all. Defendants argue that this Court should abstain from this case because it primarily involves matters relating to child custody and family law and that, because of this, the Court is either barred from exercising jurisdiction under the "domestic relations exception" or, alternatively, it should abstain from this case under *Younger v. Harris*, 401 U.S. 37 (1971). County Mot. 3-6; City Mot.7-10. The City also levies the additional challenge that

United States District Court
Northern District of California

Plaintiffs lack standing. City Mot. 8-10. The Court addresses each in turn.

### a. Domestic Relations Exception

"The Supreme Court has long recognized that, when the relief sought relates primarily to domestic relations, a doctrine referred to as the domestic relations exception divests federal courts of jurisdiction." *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946-47 (9th Cir. 2008) (citing *In re Burrus*, 136 U.S. 586 (1890) and *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L. Ed. 226 (1858)). "[T]he domestic relations exception applies only to the diversity jurisdiction statute;" it does not apply to federal question cases under 28 U.S.C. § 1331. *Id.*

Here, the Court has jurisdiction over Plaintiff's claims under federal question jurisdiction; thus, the domestic relations exception does not apply here.

### b. *Younger* Abstention

In *Younger*, the Supreme Court reaffirmed that "federal courts [cannot] enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41. The Court has since expanded this principle to civil enforcement actions "akin to" criminal proceedings, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975), and to suits challenging "the core of the administration of a State's judicial system," *Juidice v. Vail*, 430 U.S. 327, 335 (1977).

"*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). In addition to these "threshold requirements," the Ninth Circuit also requires that "[t]he requested relief must seek to enjoin or have the practical effect of enjoining ongoing state proceedings." *Id.* at 758. If these requirements are met, and no exception[3] to *Younger* applies, a

---

[3] A party may avoid application of the *Younger* abstention doctrine if "'the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Gilbertson v. Albright*, 381 F.3d 965, 983 (9th Cir. 2004) (quoting *Huffman v. Pursue, Ltd.*, Case No.: 5:18-cv-01871-EJD).

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS;
GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE

court must abstain. *Id.* In general, *Younger* abstention "remains an extraordinary and narrow exception to the general rule" that "[a] federal court's obligation to hear and decide a case is virtually unflagging." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (internal quotation marks omitted).

Here, the threshold requirements are met. Plaintiffs concede that there are ongoing state dependency proceedings. *See* Dkt. No. 41 at 4-5. These proceedings fall within the realm of "quasi-criminal enforcement actions." *See Moore v. Sims*, 442 U.S. 415, 423 (1979) ("[T]he temporary removal of a child in a child-abuse context is . . . 'in aid of and closely related to criminal statutes.'") (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). They implicate "important state interests" in child protection and custody. *See Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018) ("states have an undeniable interest in family law"); *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) ("Family relations are a traditional area of state concern.") (quoting *Moore*, 442 U.S. at 423). Finally, there is an adequate opportunity in these state proceedings to raise federal challenges, as state courts are competent to hear federal claims. *See, e.g.*, *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) ("If the constitutional claims in the case have independent merit, the state courts are competent to hear them.").

However, whether this action would have "the practical effect of enjoining" the state dependency proceeding is a closer question. Plaintiffs argue that such is not the case here because the issues raised in this case are distinct from the issues raised in the dependency proceeding, and would not affect it. Dkt. No. 41 at 4-5. Defendants disagree and argue that the proceedings are necessarily intertwined, since, absent a court order awarding them custody, Plaintiffs are non-custodial grandparents who cannot pursue a Fourteenth Amendment claim. Dkt. No. 47 at 3; *see also* Dkt. No. 46 at 4.

The Ninth Circuit has explained that the requirement of not "hav[ing] the practical effect of enjoining the state proceedings" stems from the policies of *Younger* itself. *See*

---

420 U.S. 592, 611 (1975)).

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) ("[T]here is a vital and indispensable fourth element: the policies behind the *Younger* doctrine must be implicated by the actions requested of the federal court."). These policies include

> [t]he notion of "comity" [which] includes a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.

*Gilbertson v. Albright*, 381 F.3d 965, 973 (9th Cir. 2004) (quoting *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). This requirement should be stringently applied: "abstention is only appropriate in the narrow category of circumstances in which the federal court action would actually 'enjoin the [ongoing state] proceeding, or have the practical effect of doing so;'" potential interference is not enough. *AmerisourceBergen*, 495 F.3d at 1149 (quoting *Gilbertson*, 381 F.3d at 978). While direct interference is not required, "some interference with state court proceedings is . . . necessary." *Id.* at n.9.

Applying these considerations here, the Court, on balance, agrees with Plaintiffs. As will be discussed in greater detail below, Plaintiffs claim, among other things, that Defendants interfered with their procedural and substantive due process rights because they have a "liberty interest in familial integrity and association." Compl. ¶ 53, 66. In adjudicating these claims, this Court will have to decide whether Plaintiffs, as non-custodial grandparents, have such an interest. However, this will not practically impact the dependency proceedings in Nevada. Whether or not Plaintiffs have this liberty interest and whether or not Defendants interfered with it, the Nevada courts will be free to adjudicate who should have custody over JB and AB. Thus, this action will not "actually" have "the practical effect of enjoining" the dependency proceedings. *AmerisourceBergen*, 495 F.3d at 1149. The Court cannot abstain under *Younger*.

### c. Standing

The City additionally moves to dismiss Plaintiffs' claims because they lack standing. City

Mot. 8-10. The "irreducible constitutional minimum" of standing requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The City's sole argument regarding standing relates to this third requirement: redressability. In particular, the City argues that because Plaintiffs do not have a liberty interest in familial association, they do not have standing to sue for violations of this right. Mot. 8-10.

The City's challenge turns on the same question which the County raises in its motion to dismiss under Rule 12(b)(6): whether Plaintiffs, as non-custodial grandparents, have a liberty interest in familial association. As the Court will discuss in more detail below, courts have not completely foreclosed grandparents from claiming a liberty interest in familial association, and Plaintiffs here allege a substantial long-standing relationship with AB and JB. *See* Section III.C.iv.a, *infra*. Accordingly, assuming all the material allegations in the Complaint as true, it does not appear from the face of the Complaint that there is no redressability. As such, the Court cannot dismiss Plaintiffs' claims for lack of standing.

### ii. Failure to Join an Indispensable Party Under Rule 12(b)(7)

A court may dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 imposes a three-step inquiry:

> 1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?
>
> 2. If so, is it feasible to order that the absent party be joined?
>
> 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005)). A party can be "necessary" in three different ways: (1) the court, "in [the party's] absence, . . . cannot accord complete relief among the parties;" (2) the party "has an interest in the action and resolving the

action in his absence may as a practical matter impair or impede his ability to protect that interest;" or (3) the party "has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest." *Id.* (citing Fed. R. Civ. P. 19(a)).

Here, the County contends that Coker and Bustamante, Jr. are necessary parties because they purportedly executed two agreements giving Plaintiffs custody of JB and AB. County Mot. 6 (citing Compl. ¶¶ 33, 37). The County argues that, if the Court were to proceed, it would necessarily adjudicate their rights under these agreements and thus these parties are indispensable under Fed. R. Civ. P. 19(a)(1)(B)(i). *Id.* The County also argues that the State of Nevada is a necessary party because it issued a warrant and placed JB and AB in protective custody. *Id.* at 7.

The Court disagrees that any of these parties are necessary. As will be discussed below, Plaintiffs claims in this action primarily relate to constitutional violations which stem from their own claimed "liberty interest in familial integrity and association." Compl. ¶¶ 53, 66. The Court can resolve this issue with respect to Plaintiffs without reaching the question of who should actually be given custody over JB and AB. Thus, none of these parties are "necessary" under Rule 19. As such, the Court cannot dismiss these claims under Rule 12(b)(7).

### iii. Failure to State a Claim Under Rule 12(b)(6)

#### a. Claims for Constitutional Violations (Counts I-III)

Plaintiffs' first three causes of action are based on similar theories of constitutional violations relating to their liberty interests in familial integrity and association, as well as free speech rights in exercising those interests. In their first cause of action, Plaintiffs allege that they were deprived of procedural due process because Defendants, without sufficient procedural safeguards, interfered with their "liberty interest in familial integrity and association." Compl. ¶ 53. In their second cause of action, Plaintiffs alleged that Defendants violated their substantive due process rights, which included "their liberty interests in the right of familial association, and their privacy rights under the California State Constitution." *Id.* ¶ 66. In their third cause of

action, Plaintiffs claim *Monell* liability premised on these violations. *See id*. ¶ 74 ("violations of Plaintiffs' constitutional rights alleged above"); *see also id*. ¶ 75 (referencing a "deliberate indifference to the rights and safety of families").

Defendants move to dismiss all three claims on the grounds that Plaintiffs, as non-custodial grandparents, do not have a liberty interest in familial integrity and association. County Mot. 9-12; *see also* City Mot. 8-9. Defendants also move to dismiss each of these claims on other grounds tied to legal standards specific to these claims. County Mot. 12-14; City Mot. 9-12. The Court addresses each in turn.

### 1. Liberty Interest in Familial Integrity and Association

Turning first to the question of Plaintiffs' liberty interest, "there is no question that *parents* have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children." *Miller v. California*, 355 F.3d 1172, 1175 (9th Cir. 2004) (emphasis in original). However, the Ninth Circuit "ha[s] never held that any such right extends to grandparents." *Id*. (emphasis in original). For example, in *Miller*, the Ninth Circuit determined that non-custodial grandparents, who, for roughly two years, had acted as de facto parents to grandchildren who were dependents of the juvenile court, did not "have a substantive due process right to family integrity and association with those grandchildren." *Id*. at 1173. Similarly, in *Mullins v. Oregon*, the Ninth Circuit held that grandparents "by virtue of genetic link alone" had no liberty interest in the adoption of their grandchildren, with whom they had never had more than "minimal contact," "seeing them only occasionally and even then only for a few hours at a time." 57 F.3d 789, 794, 797 (9th Cir. 1995).

However, courts have not completely foreclosed grandparents from claiming a liberty interest in familial integrity, either. In *Moore v. City of East Cleveland*, the Supreme Court invalidated a city ordinance which made it unlawful for a grandmother to live with her son and two grandsons in a single family home. 431 U.S. 494, 499 (1977). The Court observed that "the Constitution protects the sanctity of the family," which was rooted in a tradition that "by no means

[was] limited to respect for the bonds uniting the members of the nuclear family." *Id*. at 503. Because of this, the Court reasoned that the constitutional protection for "[d]ecisions concerning child rearing" which it had recognized for parents could be extended to "grandparents or other relatives who occupy the same household [and] indeed who may take on major responsibility for the rearing of the children." *Id*. at 505.

In *Osborne v. County of Riverside*, another district court analyzed *Moore*, *Mullins*, and *Miller*, and concluded that "these cases establish the rule that grandparents have no liberty interest in familial integrity or association with their grandchildren 'by virtue of genetic link alone,' but grandparents who have 'a long-standing custodial relationship' with their grandchildren such that together they constitute an 'existing family unit' do possess a liberty interest in familial integrity and association." 385 F. Supp. 2d 1048, 1054 (C.D. Cal. 2005) (citing *Moore*, 431 U.S. at 499, 503-06; *Mullins*, 57 F.3d at 794; *Miller*, 355 F.3d at 1176-77). The court then relied on this reasoning to conclude that Plaintiffs, a paternal grandmother and aunt claiming due process violations for a child's improper removal from their home, may have a liberty interest in familial integrity and association, although it had not been adequately pled in the complaint. *Id*. at 1055.

Here, taking Plaintiffs' allegations as true and construing them in the light most favorable to Plaintiffs, the Court finds that it cannot foreclose the possibility that Plaintiffs have adequately alleged a cognizable liberty interest in familial integrity and association. Unlike *Miller* and *Mullins*, Plaintiffs here allege that JB and AB have spent a substantial amount of time living with Plaintiffs: AB had lived with Plaintiffs for 4 years of her life, and JB had lived with Plaintiffs for 3 years of his life. *Id*. ¶ 30. Plaintiffs also allege that they are not only genetically related to JB and AB, but also "had established a long standing custodial relationship such that they were an existing family unit," *id*. ¶ 31, and make factual allegations in support of this statement, including:

> The PLAINTIFFS served as the surrogate parents for the MINORS. The PLAINTIFFS and MINORS shared a long standing and substantial emotional and psychological bond with each other. These bonds and attachments derived from the intimacy of their daily interactions and associations. The MINORS felt nurtured, comfortable, safe, and loved in the home of the PLAINTIFFS. The

PLAINTIFFS promoted their family 's belief system and way of life through instruction and child wearing of the MINORS, and preserved blood ties through the MINORS interactions and associations with extended family members.

*Id*. ¶ 32.

Accordingly, Plaintiffs' constitutional claims cannot be dismissed on the basis that they do not have a recognized liberty interest of which they were deprived.

### 2. Substantive and Procedural Due Process Claims (Counts I and II)

Turning next to Defendants' remaining challenges to Plaintiffs' constitutional claims, Defendants move to dismiss Plaintiffs' first and second claims as against the City, the County, and the SJPD, as municipalities cannot be held liable for § 1983 violations under a theory of *respondeat superior*. County Mot. 14; City Mot. 10. Defendants are correct on this point. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). Accordingly, Plaintiffs' first and second causes of action against the City, the County, and the SJPD are DISMISSED WITH PREJUDICE.

What remains of Plaintiffs' first and second claims, then, is their assertion against Martin and individual DOE defendants. None of these individuals have been identified and/or appeared in this action. Accordingly, Plaintiffs' first and second causes of action remain pending against these individuals. The Court need not (and, indeed, cannot) address the other challenges that Defendants levy against these causes of action, including: failure to allege sufficient facts to plausibly state these claims (City Mot. 10-11); failure of any authority cited in paragraph 65 to give rise to a separate basis for procedural due process rights (County Mot. 11-12); and qualified immunity[4] (County Mot. 12-14). Instead, these challenges can only be raised by the individual defendants themselves.

---

[4] Municipalities "do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993)). Thus, qualified immunity can only be asserted by the individual defendants as a defense against Plaintiffs' first two claims.

### 3. *Monell* Claim (Count III)

Municipalities cannot be held vicariously liable for the actions of their employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). For a municipality to be liable under § 1983, a plaintiff must prove that a municipal "policy or custom" caused his constitutional injury. *Id*. at 694. It is insufficient for a plaintiff simply to identify an act "attributable to the municipality;" rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 404 (quoting *Monell*, 436 U.S. at 694). The challenged policy may be one of "action or inaction." *Waggy v. Spokane Cty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). "Under an inaction policy claim, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees." *Id*.

Defendants move to dismiss Plaintiffs' *Monell* claim as insufficiently plead. County Mot. 14-15; City Mot. 12-13. In particular, Defendants fault Plaintiffs for a lack of specificity, including, for example, that they fail to identify specific policies or customs that caused their constitutional injury. *Id*.

The Court agrees with Defendants. The Complaint recites a series of unidentified policies which roughly parrot Plaintiff's due process claims. *Compare, e.g.*, Compl. ¶¶ 53-57 (alleging due process violations by "unlawfully detain[ing]" AB and JB, "question[ing], threaten[ing], examin[ing], and coerc[ing]" AB and JB, and performing "medical examinations"), *with* Compl. ¶ 75 (alleging policies of "seizing and detaining children," "causing minor children to be interviewed," and "causing medical examinations and/or procedures of a minor child"). At no point do Plaintiffs plead facts specific to the City or County that make it plausible that these policies exist. *See id*. The Complaint also levies allegations about inadequate training which suffers from similar deficiencies. *Compare, e.g.*, Compl. ¶¶ 53-58, 65, *with* Compl. ¶ 76 (alleging, among other things, no or inadequate training on "14th Amendment based rights of familial association," including the "right to raise and care for one's child without unreasonable

government interference"). Even taking these allegations as true and construing them in the light most favorable to Plaintiffs, they are inadequate. *Compare, e.g.*, *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (failure to allege "facts regarding the specific nature of [the offending] 'policy, custom or practice,' other than to state that it related to 'the custody, care and protection of dependent minors . . .'" was inadequate). Plaintiffs' generic list of policies, at bottom, do nothing more than restate their due process claims; what alleged policies or customs they map to remains unclear. *See* Compl. ¶¶ 65, 66. As such, they fail "to give fair notice and to enable [Defendants] to defend [themselves] effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). This is insufficient to state a claim under Rule 12(b)(6). Plaintiffs' third claim is therefore DISMISSED WITH LEAVE TO AMEND.

### b. Failure to Comply with Mandatory Duties (Count IV)

Section 815.6 provides a private right of action against a public entity for breach of a mandatory duty. Section 815.6 has three discrete requirements which "must be met before governmental entity liability may be imposed under Government Code section 815.6: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." *San Mateo Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 428, 152 Cal. Rptr. 3d 530, 538-39 (Ct. App. 2013). Under the first requirement, "the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *San Mateo Union*, 213 Cal. App. 4th at 428. "Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." *Id*. at 428-29.

Here, Plaintiffs claim that Defendants violated mandatory duties owed to them under Cal. Welf. & Inst. Code §§ 305, 306, 307, 307.4, 308, 309, 311 , 313, 319, 328, 328.3, 340 and the

1    Regulations of the California Health and Human Services Agency, Department of Social Services,

2    Child Welfare Services Manual Policies and Procedures ("DSS Manual"). Compl. ¶¶ 79, 80.

3    Defendants move to dismiss Plaintiffs' fourth cause of action on the basis that none of these

4    provisions give rise to mandatory duties that Defendants owe to Plaintiffs. County Mot. 15-17;

5    City Mot. 13-15.

6         The Court agrees. Sections 305, 306, and 307 relate to when peace officers or social

7    workers can take custody of minors. Sections 307.7 and 308 require notice to "the parent,

8    guardian, or responsible relative" when a minor is placed into custody. None of these provisions

9    create any mandatory obligations to non-custodial grandparents.

10        Other referenced provisions are even more attenuated, as they relate to circumstances that

11   are not present in this case. Specifically, section 311 relates to probation officers, who are not

12   mentioned in the Complaint. Section 313 states that a minor shall be released within 48 hours

13   unless a dependency petition is filed, but the Complaint does not allege that JB and AB were

14   detained for more than 48 hours. Sections 328 and 328.3 relate to investigations of whether

15   dependency proceedings should be commenced and section 340 authorizes the issuance of a

16   warrant at the commencement of a dependency proceeding. However, no California dependency

17   proceeding was initiated here. Accordingly, none of these sections create mandatory duties which

18   could have been owed to Plaintiffs under the facts they allege.

19        The only section that comes close is section 309, which requires that a "social worker shall

20   immediately release the child to the custody of the child's parent, guardian, or relative . . . unless

21   one or more of the following conditions are met." However, even if this provision does impose a

22   mandatory duty, Plaintiffs have not provided sufficient facts to allege that it was meant to protect

23   against the "kind of risk of injury suffered by" Plaintiffs or that breach of this duty was the

24   proximate cause of their injuries. *San Mateo Union High Sch. Dist.*, 213 Cal. App. 4th at 428.

25   Accordingly, Plaintiffs' allegations with respect to section 309 also fail.

26        Plaintiffs' allegations relating to the DSS Manual are insufficient for similar reasons. The

27

28   Case No.: 5:18-cv-01871-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS;
     GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE

only two specific provisions which Plaintiffs cite in their Complaint—sections 31-101(.2) and 31-135(.1)—do not appear to create duties which Defendants owed to Plaintiffs as non-custodial grandparents. *See* Compl. ¶ 81 (describing § 31-101(.2) as requiring that social workers be trained and skilled in emergency response); *id*. ¶ 83 (describing § 31-1.5(.1) as requiring SSA to ensure that it had the authority to remove a child prior to removal). Moreover, even if they do, Plaintiffs have not alleged any facts about how, specifically, Defendants breached these duties and proximately caused their injuries. Plaintiffs bare assertion that "[b]ut for" Defendants' inability to follow the DSS Manual Plaintiffs would not have suffered injuries, *see, e.g.*, Compl. ¶ 81, is insufficient.

Accordingly, the Court finds that Plaintiffs have failed to adequately allege that Defendants breached a mandatory duty owed to them. Plaintiffs' fourth claim is DISMISSED WITH LEAVE TO AMEND.

### c. Intentional Infliction of Emotional Distress (Count V)

A claim for intentional infliction of emotional distress requires: (1) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress;" (2) that the plaintiff actually suffered severe emotional distress; and (3) that the defendant's outrageous conduct was the "actual and proximate" cause of the plaintiff's emotional distress. *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 874-75 (2010).

Here, Plaintiffs have adequately pled the first two elements. As to the first, Plaintiffs allege that Defendants engaged in a wide range of malicious actions, including

> ALL DEFENDANTS engaged in the aforementioned outrageous, unprivileged conduct, including, but not limited to: (a) the use of duress and undue influence in forcing PLAINTIFFS to submit to their demands; (b) by unlawfully removing, and detaining, and continuing the detention of the MINORS; (c) by investigating and questioning with intimidation, coercion and duress of the MINORS; (d) by maliciously withholding exculpatory evidence; (e) by falsely and maliciously alleging and reporting that MINORS' physical health and safety was threatened; (f) by causing MINORS to be physically examined without presence of the PLAINTIFFS; and (g)

by retaliating against PLAINTIFFS due to their exercise of their rights to free speech to complain about DEFNDANTS' conduct.

Compl. ¶ 86. Accepted as true and construed in the light most favorable to Plaintiffs, this qualifies as "extreme and outrageous conduct." *See Catsouras*, 181 Cal. App. 4th at 874. As to the second, Plaintiffs allege that they suffered severe emotional distress, including "fright, nervousness, anxiety, worry, mortification, shock, humiliation and indignity." Compl. ¶ 89.

However, Plaintiffs allegations with respect to proximate cause are lacking. The Ninth Circuit has recently summarized proximate causation as follows:

> The proximate cause question asks whether the unlawful conduct is closely enough tied to the injury that it makes sense to hold the defendant legally responsible for the injury. W. Page Keeton et al., Prosser and Keeton on Torts § 42 (5th ed. 1984). Proximate cause is "said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id.* It is a question of "whether the duty includes protection against such consequences." *Id.* We have held that "the touchstone of proximate cause in a § 1983 action is foreseeability." *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, 555 U.S. 1150, 129 S. Ct. 1036, 173 L. Ed. 2d 466 (2009). The Supreme Court has observed that "[p]roximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Paroline v. United States*, 572 U.S. 464, 134 S. Ct. 1710, 1719, 188 L. Ed. 2d 714 (2014). "A requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id.*

*Mendez v. Cty. of Los Angeles*, No. 13-56686, 2018 WL 3595921, at *5 (9th Cir. July 27, 2018). Here, Plaintiffs allege no facts that would make it plausible that their emotional distress would have been reasonably foreseeable to Defendants at the time of the events at issue. As such, they have failed to plead this last element. Plaintiffs' fifth claim is therefore DISMISSED WITH LEAVE TO AMEND.

### iv. Motion to Strike Allegations of Third Party Rights Under Rule 12(f)

A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy,*

*Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

Here, the County moves to strike excerpts from paragraphs 43-47 because they relate to harms suffered by Eva Sanchez, her daughter, JB, and AB, who are not parties to this action. County Mot. 8. While the Court agrees that Plaintiffs cannot sue for harms suffered by these individuals, it declines to strike these excerpts. These excerpts provide relevant background for Plaintiffs' claims, and they do not, when read in the context of the entire Complaint, purport to assert claims for which Plaintiffs do not have standing. Accordingly, they are neither immaterial, impertinent, nor quality as any other type of matter which should be stricken under Rule 12(f). The County's motion to strike is DENIED.

## IV. ORDER

Defendants' motions (Dkt. Nos. 31, 35) are GRANTED IN PART and DENIED IN PART, as the Court will dismiss Plaintiffs' claims on certain grounds and decline the County's request to strike certain portions of the Complaint. Plaintiffs' motions (Dkt. Nos. 40, 43) are GRANTED IN PART and DENIED IN PART, as the Court has considered the telephonic warrant but excluded the remainder of the challenged documents from its considerations.

Based on the foregoing, the Court ORDERS as follows:

1. Plaintiffs' first and second causes of action are DISMISSED WITH PREJUDICE as against the City, the County, and the SJPD.

2. Plaintiffs' first and second causes of action against the individual defendants remain pending.

3. Plaintiffs' third, fourth, and fifth causes of action are DISMISSED WITH LEAVE TO AMEND.

Any amended complaint must be filed no later than twenty-one (21) days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 17, 2018

_____
EDWARD J. DAVILA
United States District Judge